UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-14214-CV-MOORE
(10-14004-CR-MOORE/LYNCH)
MAGISTRATE JUDGE P.A. WHITE

ROLLIE GILLIAM,

              Movant,

vs.

UNITED STATES OF AMERICA,

              Respondent.

_____/

## GOVERNMENT'S ANSWER TO MOVANT'S MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. §2255

      The United States of America, by and through its undersigned Assistant United States Attorney, files this answer to pro se movant Rollie Gilliam's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. §2255. For the reasons set forth below, the motion should be denied.

**I.    FACTUAL BACKGROUND**[1]

      On December 15, 2009, the U.S. Drug Enforcement Administration (DEA) organized a buy-bust operation targeting movant Rollie Gilliam. The operation was conducted through the use of a confidential source ("CS") who would purchase crack cocaine from Gilliam. Before and after the transaction, officers met with the CS at a predetermined location and searched him. No narcotics, money or other contraband were found. The CS was equipped with a listening device and the CS's residence was equipped with video surveillance to record the transaction. The CS was given $650

---

[1] The following statement of facts is excerpted from the government's factual proffer made at Gilliam's change of plea hearing on March 2, 2010 (D.E. 94: 9-12), and the Offense Conduct section of Gilliam's Presentence Investigation Report (PSI at ¶¶4-15).

to be used as purchase money for the crack cocaine.  DEA Agents conducted surveillance of the CS during the transaction, and a take-down team was positioned in close proximity to the CS's residence.

The CS called Gilliam, who instructed the CS to meet him at the CS's residence.  The CS arrived at the residence and called Gilliam to let Gilliam know that he was there.  Gilliam replied that he "was coming."  Approximately 25 minutes later, Gilliam was observed parking in the driveway of the CS's residence.  Gilliam got out the car and went inside, where Gilliam and the CS were observed and heard engaging in a conversation with each other.  Gilliam requested that the CS front the purchase money, but the CS declined.  Gilliam then told the CS that he (Gilliam) had to go "drop it."  Gilliam asked the CS if he understood what "dropping it" meant, and the CS said, "yes, you have to cut it."  Gilliam said, "No, I have to cook it up."  Gilliam then explained to the CS that he would make sure the "shit" would be good because his stuff was "like fire."  Gilliam advised the CS that he would return shortly with the dope.  Gilliam was then observed leaving the CS's residence.

Within an hour, Gilliam called the CS and advised that he was on his way.  A short time later, a vehicle pulled into the driveway of the CS's residence.  A black male, later identified as codefendant George Baty, was observed entering the CS's residence.  Baty handed the CS a small plastic bag containing a substance which was later confirmed to be 6.7 grams of crack cocaine.  The CS handed Baty $640 in purchase money.  While Baty and the CS were talking, Baty received a phone call. Agents later confirmed that the call was from Gilliam through an analysis of phone records. Baty told the caller: "What's up partner . . . yeah, I'm straight."  Thereafter, when asked by the CS if the crack "would weigh," Baty told the CS yes, and added, "there may even be some extra

... we do take care of our customers."

Baty was arrested at the scene, and Gilliam was arrested at Baty's residence.  Baty gave a post-<u>Miranda</u> statement in which he advised agents that he agreed to transport the crack cocaine at Gilliam's request, and that Gilliam was going to pay Baty $20.

In the month preceding this buy-bust transaction, the CS had engaged in controlled purchases of crack cocaine from Gilliam on three other occasions. These deals were all conducted at Gilliam's residence.  Gilliam sold the CS a combined total of 2 grams of crack cocaine during these three prior transactions.

## II.   COURSE OF PROCEEDINGS AND DISPOSITION IN THE COURT BELOW

On January 14, 2010, a Grand Jury sitting in the Southern District of Florida returned a two-count Indictment charging Rollie Gilliam and George Baty with conspiracy to possess with intent to distribute more than 5 grams of crack cocaine, in violation of 21 U.S.C. §846 (Count 1); and possession with intent to distribute more than 5 grams of crack cocaine, in violation of 21 U.S.C. 841(a)(1) and 18 U.S.C. § 2 (Count 2).  (D.E. 29).

### A.    The Plea Agreement and Plea Colloquy

On March 2, 2010, Gilliam pled guilty to Count 1 of the indictment pursuant to a written plea agreement (D.E. 65).  Gilliam's plea agreement with the government included the following terms:

- The government agreed to dismiss Count 2 of the Indictment (D.E. 65 at ¶2).

- Gilliam acknowledged his understanding that the Court could impose any sentence within and up to the statutory maximum after consideration of the advisory sentencing guidelines range and other factors (D.E. 65 at ¶3).

- Gilliam acknowledged his understanding that pursuant to 21 USC 841(b)(1)(B) and 851, the mandatory minimum penalty for the offense to which he pled guilty was 10 years imprisonment, and the statutory maximum

sentence was life imprisonment (DE 65 at ¶4).

- The government agreed to recommend a 2 or 3 point reduction for movant's acceptance of responsibility, subject to various conditions (DE 65 at ¶7).

- Gilliam acknowledged his understanding that the sentence had not yet been determined, and that **"any estimate of the probable sentencing range or sentence that the defendant may receive,** whether that estimate comes from the defendant's attorney, the government, or the probation office, **is a prediction, not a promise, and is not binding on the government, the probation office or the Court"** (DE 65 at ¶9) (emphasis added).

- Gilliam acknowledged his understanding that he could not withdraw his plea if he was dissatisfied with the sentence imposed (DE 65 at ¶¶3, 9).

- Gilliam confirmed that the written plea agreement constituted "**the entire agreement and understanding between the United States and the defendant**," and that there were no side agreements or representations between the parties (DE 65 at ¶11).

- The plea agreement did *not* provide that the parties would jointly recommend that the court impose a sentence within the advisory guidelines range. As a result, both parties were free to argue in favor of variances from the advisory range.

The change of plea hearing was held on March 2, 2010 before U.S. Magistrate Judge Frank J. Lynch (D.E. 63). Both of Gilliam's lawyers – Edward Mosher and Jeffrey Garland – were present at the hearing. At the outset, Gilliam announced his intention to change his plea from not guilty to a plea of guilty (D.E. 94: 2-3, 7). The court encouraged Gilliam to ask for clarification if he did not understand the questions, and informed Gilliam that he would be free to consult with his lawyers anytime, and for "as much time as [he] need[ed]" throughout the proceedings (DE 94: 3).

Gilliam confirmed that he "had an opportunity to review all of the written discovery and documents with [his] attorneys," and that he had "fully discussed [the] charges and the case in general" with them (DE 94: 5). The Court asked Gilliam questions to confirm that he was clear-

headed and competent to make decisions about his case (DE 94: 4-5).

The court advised Gilliam that the penalty he faced by virtue of pleading guilty to the conspiracy charged in Count 1 was a mandatory minimum of 10 years imprisonment up to a statutory maximum of life imprisonment (DE 94: 19). Gilliam indicated that he understood that to be the possible penalty (DE 94: 8). Thereafter, the Court and Gilliam engaged in the following exchange:

> **COURT: *Does this plea agreement represent in its entirely all understandings that you have with the government?***
>
> **GILLIAM: *Yes, sir.***
>
> COURT: Do you understand the terms of the plea agreement?
>
> GILLIAM: Yes, sir.
>
> **COURT: *Has anyone made any other or different promises or assurances of any kind to you in an effort to induce you to plead guilty?***
>
> **GILLIAM: *No, sir.***
>
> **COURT: *Do you understand that*** the terms of the plea agreement are merely recommendations to the court, and that ***the District Judge*** assigned to your case can reject those recommendations without permitting you to withdraw your plea of guilty and ***could impose a sentence that is more sever than you may anticipate?***
>
> **GILLIAM: *Yes, sir.***

(DE 94: 8-9) (emphasis added).

The Court discussed the operation of the sentencing guidelines, and explained to Gilliam that the guidelines were only advisory (DE 94: 13-14). The Court asked Gilliam whether he understood that his advisory guideline sentence could not be determined until after a presentence report was completed and both sides had an opportunity to review and object to any factual or legal inaccuracies

(DE 94: 14).  The Court then reiterated that "the sentence imposed may be different from any estimate your attorney's may have given you" and Gilliam acknowledged that he understood that (DE 94: 14).  The Court subsequently emphasized that the district court "has the authority to depart from the guidelines and sentence you up to the statutory maximum permitted by law" and Gilliam again acknowledged that he understood (DE 94: 15).

Gilliam stipulated to the government's factual proffer (DE 94: 13).  After explaining to Gilliam the rights associated with a jury trial which he was waiving by virtue of his guilty plea, the court recommended that his plea should be accepted and that he should be adjudicated guilty (DE 94: 18-19).

According to trial counsel Ed Mosher and Jeff Garland, following the plea hearing, Gilliam attempted to cooperate with the government and was debriefed by agents.  Ultimately, the information he provided was determined to be of no value, and Gilliam never received any reduction in his sentence based upon substantial assistance.

### B.     Sentencing

On April 21, 2010, the probation office disclosed its Presentence Investigation Report (PSI), setting Gilliam's base offense level at 24, premised upon a finding that the drug quantity attributable to him was between 5 and 20 grams of crack cocaine (PSI ¶20).  The PSI also included a 2-level aggravating role enhancement (PSI ¶23).  After an enhancement under the career offender guideline (USSG §4B1.1), Gilliam's offense level was adjusted to 37.  The career offender enhancement was premised upon the following offenses sustained in Florida Circuit Court in 1992:  possession of cocaine and marijuana with intent to distribute (Dkt. #91-2233-CF), and armed robbery with a firearm and attempted robbery with a firearm (Dkt. #92-411-CF) (PSI ¶¶ 34, 35).  After an

acceptance of responsibility adjustment, Gilliam's total offense level was 34 (PSI ¶¶27-29).  With a criminal history category of VI, Gilliam's advisory guidelines range was 262-327 months (PSI ¶71).

At the sentencing hearing on June 7, 2010, Gilliam's counsel moved for a downward variance from the advisory guidelines range based on policy considerations with respect to the disparity in sentencing ranges for crack and powder cocaine (D.E. 85: 3-7).  The request for a variance was denied (D.E. 85: 8-9).  Gilliam was sentenced to 327 months' imprisonment (D.E. 85: 12; D.E. 79).

### C.   Post-Conviction Proceedings

Gilliam filed a notice of appeal (D.E. 82).  In his appeal, Gilliam raised only the issue of whether the District Court had abused its discretion by declining to grant a downward variance. The Eleventh Circuit affirmed the district court's judgment in an unpublished opinion dated May 26, 2011 (entered on the Court docket on June 1, 2011) (D.E. 102).  No further appeals were filed.

On June 15, 2012, movant filed the instant pro se motion to vacate, set aside or correct sentence under 28 U.S.C. §2255 (D.E. 103).  Movant's section 2255 petition purports to raise ten claims, numbered as follows:

1.   GROUND ONE:  Trial counsel was ineffective for failing to advise Gilliam that he was eligible for sentencing as a career offender (Cv DE 4 at pp. 12-16).

2.   GROUND TWO: Trial counsel was ineffective for failing to notify Gilliam that the government had filed an 851 enhancement, and in failing to explain to Gilliam the legal ramifications of the enhancement (Cv DE 4 at pp. 16-18).

3.   GROUND THREE: Trial counsel was ineffective for failing to investigate the co-

defendant's "recantation," with allegedly exonerated Gilliam (Cv DE 4 at p.18).

4.      GROUND FOUR: Trial counsel was ineffective for failing to advise Gilliam that he could challenge one of the convictions which was used as a predicate offense for his career offender designation (Cv DE 4 at p. 19).

5.      GROUND FIVE: Trial counsel rendered ineffective assistance during Gilliam's sentencing proceedings (Cv DE 4 at pp. 19-22).

6.      GROUND SIX:   Trial counsel rendered ineffective assistance during Gilliam's sentencing proceedings by failing to investigate the current state of the law relating to the constitutionality of Florida's narcotics statutes, and failing to preserve an objection to and/or collaterally challenge the Florida state drug conviction which was used as a predicate for his career offender designation (Cv DE 4 at pp.22-28).

7.      GROUND SEVEN: Trial counsel rendered ineffective assistance in Gilliam's appellate proceedings based on the failure to challenge the career offender enhancement (Cv DE 4 at pp. 28-30).

8.      GROUND EIGHT: Gilliam is actually innocent of the career offender designation because his Florida conviction for possession with intent to sell narcotics was unconstitutional (Cv DE 4 at pp. 31-34).

9.      GROUND NINE: Trial counsel rendered ineffective assistance in negotiating the guilty plea in Gilliam's case because counsel did not anticipate that Gilliam would be subject to a sentencing enhancement as a career offender and because counsel assured Gilliam that the final sentence imposed would not exceed 10 years (Cv DE 4 at pp. 34-37).

10.     GROUND TEN: Relief is warranted based on the cumulative effect of the ineffective assistance rendered by both trial counsel and appellate counsel (Cv DE 4 at pp. 37-38).

For the reasons that follow, all of movant's claims should fail.

## III.   ARGUMENT

Although Gilliam's 2255 motion purports to raise nine grounds for relief, in fact the claims are largely intertwined and repetitive, and it is therefore more efficient to address the claims topically.   Gilliam's motion essentially encompasses three main allegations.   For clarity, this response aggregates and groups Gilliam's claims as follows:  (1) alleged ineffective assistance of trial counsel in failing to adequately advise Gilliam regarding his sentencing exposure before he pled guilty (Grounds One, Two, and Nine); (2) alleged ineffective assistance of trial counsel in failing to investigate exculpatory evidence (Ground Three); and (3) alleged ineffective assistance of trial and appellate counsel in failing to challenge the application of the career offender guideline to Gilliam because Gilliam is "actually innocent" of being characterized as a career offender (Grounds Four, Five, Six, Seven, Eight).

### A.     Movant's Section 2255 Motion is Timely Filed

As a preliminary matter, this Court must decide whether the time-limit provisions in § 2255, as set forth in Section 105 of the Anti-Terrorism and Effective Death Penalty Act (AEDPA), P.L. 104-132, 110 Stat. 1214, permit the filing of movant's habeas corpus motion.[2]   In Section 105, Congress established a "1-year period of limitations" governing motions for collateral relief under

---

[2]In Hunter v. United States, 101 F.3d 1565 (11th Cir. 1996) (en banc) cert. denied, 117 S. Ct. 1695 (1997), the Court ruled that the AEDPA applies to all §2255 cases in which no notice of appeal has been filed before the Act's effective date of April 24, 1996.

§2255.  The one-year period runs from "the last of" four specified events: (1) "the date on which the judgment of conviction becomes final"; (2) "the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if a petitioner was prevented from making a motion by such governmental action"; (3) "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review"; or (4) "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence."

If a defendant appeals but does not seek a petition for writ of certiorari, his conviction and sentence become final when the time expires for filing a petition for certiorari.  Clay v. United States, 537 U.S. 522, 532 (2003).  Under Rule 13, of the Supreme Court Rules, a defendant has 90 days from the entry of judgment to file a petition for certiorari.  Thus, movant's conviction became "final" on August 24, 2011, which is 90 days after the Eleventh Circuit's opinion was issued.[3]  The instant § 2255 motion was filed on June 15, 2012, within one year, and is therefore timely.

### B.    Legal Standard in Analyzing Ineffective Assistance of Counsel Claims

Even construing his pleading liberally, as called for with a *pro se* movant, see Gomez-Diaz v. United States, 433 F.3d 788, 791 (11th Cir. 2005), Gilliam wholly fails to meet the stringent requirements for, and presumptions against, a claim of ineffective assistance of counsel. The legal standards and principles governing such claims are summed up in Michael v. Crosby, 430 F.3d 1310, 1319-1320 (11th Cir. 2005), with citations to many leading cases and controlling precedents:

---

[3]A case becomes "final" when a judgment of conviction has been rendered, the availability of appeal has been exhausted, and the time for a petition for certiorari has elapsed or a petition for certiorari has been finally denied.  Griffith v. Kentucky, 479 U.S. 314, 321, n.6 (1986).

Under Strickland [v. Washington, 466 U.S. 668 (1984)], in order to demonstrate that counsel was ineffective, a petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that counsel's deficient performance affected the outcome of the trial. 466 U.S. at 687, 104 S.Ct. 2052, 80 L.Ed.2d 674. If a defendant fails to make a showing as to either performance or prejudice, she is not entitled to relief. Id. at 697, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Thus, we need not address the prejudice prong if we find that the performance prong is not satisfied. Turner v. Crosby, 339 F.3d 1247, 1279 (11th Cir.2003), cert. denied, 541 U.S. 1034, 124 S.Ct. 2104, 158 L.Ed.2d 718 (2004); Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir.2000) ( "Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa." (citation omitted)).

Michael goes on to discuss in depth the first Strickland prong, deficient performance by counsel:

The standard for counsel's performance under Strickland is "reasonableness under prevailing professional norms." 466 U.S. at 688-89, 104 S.Ct. 2052, 80 L.Ed.2d 674. The reasonableness of counsel's performance is evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential. See Mills v. Singletary, 63 F.3d 999, 1020 (11th Cir.1995) (citing Kimmelman v. Morrison, 477 U.S. 365, 381, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986)). "Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." Rogers v. Zant, 13 F.3d 384, 386 (11th Cir.1994). Counsel's performance is deficient only if it is "objectively unreasonable and falls below the wide range of competence demanded of attorneys in criminal cases." Cross v. United States, 893 F.2d 1287, 1290 (11th Cir.1990) (citations omitted).

Moreover, "[c]ounsel will not be deemed unconstitutionally deficient because of tactical decisions." McNeal v. Wainwright, 722 F.2d 674, 676 (11th Cir.1984) (citations omitted); Crawford [v. Head, (11th Cir. 2002)], 311 F.3d at 1312 ("Deliberate choices of trial strategy and tactics are within the province of trial counsel after consultation with his client. In this regard, this court will not substitute its judgment for that of trial counsel." (quotation marks, internal alteration, and

11

citation omitted)). There is a strong presumption that counsel's performance was reasonable and adequate, with great deference being shown to choices dictated by reasonable strategy. <u>Rogers</u>, 13 F.3d at 386; <u>see also Conklin v. Schofield</u>, 366 F.3d 1191, 1204 (11th Cir.2004), <u>cert. denied</u>, 544 U.S. 952, 125 S.Ct. 1703, 161 L.Ed.2d 531 (2005). "The presumption of reasonableness is even stronger when we are reviewing the performance of an experienced trial counsel." <u>Callahan v. Campbell</u>, 427 F.3d 897, 933 (11th Cir.2005).

To overcome this presumption, the petitioner "must establish that no competent counsel would have taken the action that his counsel did take." <u>Chandler v. United States</u>, 218 F.3d 1305, 1315 (11th Cir.2000) (<u>en banc</u>) (footnote and citation omitted). Under this standard, there are no "absolute rules" dictating what reasonable performance is or what line of defense must be asserted. <u>Id.</u> at 1317. Indeed, as we have recognized, "[a]bsolute rules would interfere with counsel's independence – which is also constitutionally protected – and would restrict the wide latitude counsel have in making tactical decisions." <u>Putman v. Head</u>, 268 F.3d 1223, 1244 (11th Cir.2001).

430 F.3d at 1319-1320.

As to all of his claims, Gilliam fails to carry his burden to show both that counsels' performance was deficient to a degree that fell below a constitutional minimum, and that counsels' alleged deficient representation caused him outcome-determinative prejudice.

### 1.   Alleged Ineffective Assistance of Counsel in Failing to Investigate Exculpatory Evidence.

In <u>Streeter v. United States</u>, 335 Fed. Appx. 859, at 863-864 (11th Cir. 2009) the Court explained that "[W]here the record is incomplete or unclear about [counsel]'s actions, we will presume that he did what he should have done, and that he exercised reasonable professional judgment." (internal citations and quotation marks omitted).  To overcome that presumption, Gilliam must demonstrate that "no competent counsel would have taken the action that his counsel did take." <u>Id.</u>   While it is true that trial counsel "has a duty to conduct reasonable investigations or to make a

reasonable decision that renders a particular investigation unnecessary," there exists "no absolute duty to investigate particular facts or a certain line of defense."  See id. (citing Strickland, 466 U.S. at 691).  However, a complete failure to investigate may constitute deficient performance of counsel in certain circumstances.  See Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001).

The facts of the case are not in dispute.  Gilliam met a DEA CS at the CS's residence and negotiated a crack cocaine transaction.  The discussion was explicit, and was captured on audio and videotape.  Gilliam then left to cook the powder into crack, and co-defendant George Baty arrived at the CS's house a short time later to deliver the narcotics.  While the CS was meeting with Baty, Gilliam called Baty to check on the status of the transaction.  Baty was arrested at the scene, and Gilliam was arrested at Baty's house.  Baty later told agents that Gilliam had paid him to deliver the crack to the CS.  Baty cooperated with the government and was willing to testify against Gilliam.

In his 2255 motion, Gilliam now claims that "in or about 2010" a friend of Baty's (Laquesha McMillian) advised trial counsel Jeff Garland that Batty "recanted his statements implicating [Gilliam]" (Cv. D.E. 4 at p. 18).  Gilliam states that attorney Garland failed to investigate this alleged turn of events, and that had Gilliam been aware of the "possibility" that Baty "had information helpful to [Gilliam]'s criminal case/defense," Gilliam would have persisted in his plea of not guilty and gone to trial.

Gilliam's vague assertions regarding Baty's alleged recantation are insufficient to entitle him to relief based on ineffective assistance of trial counsel.  Gilliam's affidavit states that Baty told McMillian that "he [Baty] lied to investigators" and that Gilliam "was not guilty of the criminal allegations" (Cv. D.E. 4, "Sworn Affidavit of Movant" at ¶15).  Gilliam submits an affidavit from McMillian which states that "in 2010" she notified attorney Jeff Garland that "George Batty [sic]

13

had called [McMillian] ... from jail and told [McMillian] that Mr. Gilliam had nothing to do with his arrest." Gilliam fails to identify any specifics regarding the nature of Baty's alleged recantation. Notably, Gilliam submits no affidavit from Baty himself which would support his allegation that Baty was willing to testify in any manner which would have been helpful to Gilliam in defending the case. Indeed, Gilliam's assertions regarding Baty's alleged recantation are conclusively refuted by the record evidence, which indicates that Baty was a willing cooperator, and that his substantial assistance to the government in its prosecution of Gilliam earned Baty a reduction in his sentence. Thus, Gilliam's wholly speculative and vague assertions cannot support relief under §2255. See, e.g., Brain v. United States, 2011 WL 1343344 (E.D. Tenn. April 8, 2011) (noting that movant did not identify by name any witnesses, including expert witnesses, who would have been available to testify on his behalf and did not present affidavits from any witnesses setting forth the specific testimony that they could have offered; finding that movant was not entitled to evidentiary hearing because he had not stated a viable claim of ineffective assistance of counsel based on the theory of uncalled witnesses).

Regardless, Gilliam's claim that his lawyers failed to investigate this issue simply is not true. Undersigned counsel has consulted with attorney Ed Mosher, who advised (and would be prepared to testify if necessary) that he interviewed Baty and Baty did not recant his statements. Baty had only conveyed to McMillian that he (Baty) felt badly about how things had turned out. Again, it bears noting that Gilliam attaches no affidavit from Baty indicating that Baty was in fact poised to recant his prior statements inculpating Gilliam. Therefore Gilliam, who has the burden of proof, simply fails to demonstrate that there would have been a recantation at all, or that Baty would have been willing to testify as a defense witness. Indeed, the record refutes this, given that Baty ultimately

received a Rule 35 reduction.

Additionally, Gilliam cannot establish prejudice. To prevail in this 2255 motion, Gilliam must show not only that trial counsel's alleged failure to investigate amounted to constitutionally deficient performance, but also that the outcome of these proceedings would have been different but for counsel's unprofessional errors. For Gilliam, this would mean demonstrating some likelihood that he would have prevailed at trial if counsel had investigated Baty's purported recantation. Given the overwhelming weight of the evidence against Gilliam, his conviction after a jury trial was a virtual certainty. This is true irrespective of Baty's statements. Even if Baty had declined to cooperate with the government, Gilliam's guilt still could have been clearly established through the compelling audio and video recorded evidence of him personally negotiating a crack cocaine transaction with the CS. Moreover, even had Baty taken a step further and testified as a *defense* witness, this still would not have changed the outcome. As a friend of Gilliam's, Baty's motivation for fabricating exonerating testimony would have been readily apparent. The most favorable testimony that Baty could have offered in Gilliam's defense would have been for Baty to have attempted to take full responsibility for the cocaine which he delivered to the CS. Baty would have to have denied that Gilliam was the true owner of the narcotics which Baty delivered to the CS, and he would have had to deny that Gilliam was involved in the deal at all. Such testimony attempting to distance Gilliam from the narcotics transaction would have been entirely incredible and flatly contradicted by overwhelming evidence – including Gilliam's recorded negotiations with the CS an hour beforehand, the phone call placed to Baty by Gilliam while the transaction was underway, and the fact that Gilliam was arrested at Baty's residence. In all likelihood, such testimony from Baty would have been disregarded by the jury and Gilliam would have been convicted notwithstanding Baty's attempt

15

to exonerate him.

Based on the foregoing, it is clear that Gilliam's allegation that his trial counsel rendered ineffective assistance by failing to investigate lacks merit.  He fails to demonstrate either deficient performance or prejudice, and therefore the claim should be summarily dismissed.

### 2.     Alleged Ineffective Assistance of Counsel in Failure to Correctly Advise Movant about Sentencing Exposure

Gilliam claims that trial counsel was ineffective for failing to accurately advise him that the government had filed an 851 enhancement, and by affirmatively misleading him into believing that he would *not* be sentenced as a career offender.  Gilliam alleges that had he been properly advised regarding his anticipated guidelines range, he would have opted to persist in his plea of not guilty and proceed to trial.  Because the record conclusively establishes that Gilliam was fully informed about the consequences of his plea and the possible maximum penalties, and because he cannot establish prejudice in any event, his claim should be dismissed.

A guilty plea is valid if it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant."  North Carolina v. Alford, 400 U.S. 25, 31 (1970).  Gilliam maintains that his plea was involuntary because his trial counsel rendered ineffective assistance to him during plea negotiations by giving Gilliam erroneous advice and making false assurances to him regarding his sentencing exposure.  Therefore, the voluntariness of Gilliam's plea "depends upon whether counsel's advice was within the range of competence demanded of attorneys in criminal cases."  Hill v. Lockhart, 474 U.S. 52, 57 (1985) (internal quotations omitted, citing McMann v. Richardson, 397 U.S. 759 (1970)).

Gilliam's factual assertions are conclusively refuted by the record evidence.  With respect

to his claim that he was not aware of the 851 enhancement, the record reflects that from the time of his first appearance in court on January 8, 2010, Gilliam was advised about the enhancement. During that initial appearance, the prosecutor stated that as charged, Gilliam faced a mandatory minimum term of imprisonment of 5 years up to a maximum of 40 years (D.E. 91: 5).  The prosecutor further advised that: "based upon his prior record, [Gilliam] is subject to being enhanced" and that "if enhanced, he faces a minimum 10 years up to life in prison" (D.E. 91:6).  Again at his arraignment on January 15, 2010, Gilliam was advised that his imprisonment range was 5 to 40 years, and that an enhancement based upon his criminal history would result in an increase of that range to 10 years to life (D.E. 92:4).  The government filed the notice of 851 enhancement on February 9, 2010 (D.E. 45).  In Gilliam's written plea agreement, Gilliam acknowledged his understanding that "pursuant to Title 21, United States Code, Sections 841(b)(1)(B) *and 851*, the Court must impose a mandatory-minimum ten (10) years imprisonment up to a statutory maximum term of life imprisonment" (D.E. 65 at ¶4) (emphasis added).  Then, at Gilliam's plea hearing on March 2, 2010, the Court confirmed yet again that Gilliam understood that he was facing a sentencing range of 10 years to life imprisonment due to the penalty provisions set forth in 21 U.S.C. §§841(b)(1)(B) and 851.  Thus, even if Gilliam's trial counsel failed to advise him, or misadvised him, about the 851 enhancement, it is clear from the record that he was fully aware of the enhancement and the resulting penalty range.  Gilliam's plea colloquy was more than sufficient to correct or clarify any alleged inaccurate advice he received from counsel prior to entering his plea of guilty.  See, e.g. United States v. Lambey, 974 F.2d 1389 (4ᵗʰ Cir. 1992); United States v. Craig, 985 F.2d 175 (4ᵗʰ Cir. 1993).

Gilliam further asserts that trial counsel erroneously advised him that as consideration for his

plea of guilty, he would not be sentenced as a career offender.  Gilliam also states that trial counsel assured him that the court would impose a sentence of no more than 10 years.  Undersigned counsel has consulted with attorney Jeff Garland, who advised (and would be prepared to testify if necessary) that he never made any such assurances to Gilliam.  Regardless however, Gilliam's allegations are refuted by the record and as such should be dismissed without need of an evidentiary hearing.  In his written plea agreement, Gilliam confirmed that the document itself constituted "the entire agreement and understanding between the United States and the defendant," and that there were no side agreements or representations between the parties (DE 65 at ¶11).  At his plea hearing, Gilliam was repeatedly asked whether anyone had made any side agreements, promises or assurances to induce him to plead guilty.  Gilliam had ample opportunity to inform the court about his understanding of the plea terms, if in fact he believed the terms to have been different than those contained in his written plea agreement.  He never mentioned the existence of any of the purported side agreements which he now claims were part of his plea deal.  In fact, Gilliam affirmatively denied that any side promises had been made.  It is clear that the allegations which Gilliam now makes in his 2255 motion contradict his own declarations in court and in his plea agreement.  "Solemn declarations in open court (at the guilty plea hearing) carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings."  <u>Blackledge v. Allison</u>, 431 U.S. 63, 74 (1977).   The foregoing demonstrates that Gilliam's factual allegations regarding counsel's erroneous advice and assurances regarding his final sentence are facially incredible, refuted by the record evidence, and the allegations are thus insufficient to entitle him to an evidentiary hearing on the question of whether counsel performed deficiently during plea negotiations.

Even assuming Gilliam had been misadvised about his sentencing exposure, he still would

18

be entitled to no relief.  "It is well settled that a defense attorney's erroneous calculation and prediction of the sentencing Guidelines is not a basis for setting aside a guilty plea."  United States v. Hicks, 4 F.3d 1358, 1363 n.3 (6th Cir. 1993).  See also United States v. Lundy, 2012 WL 928697 (E.D. Ky. Feb. 27, 2012) (denying 2255 relief where movant who pled guilty had alleged that his counsel failed to inform him of the risk of relevant conduct, his potential career offender status and the resulting sentencing effect, finding that "[q]uestions about what [defense counsel] did or did not communicate aside, inaccurate predictions about sentencing generally provide no basis for upsetting a prior guilty plea."); Doganiere v. United States, 914 F.2d 165, 168 (9th Cir. 1990) ("[Defendant]'s attorney's inaccurate prediction of what sentence [defendant] would receive upon pleading guilty does not rise to the level of a gross mischaracterization of the likely outcome of his case, and thus does not constitute ineffective assistance of counsel.")

Alternatively, Gilliam's claim of ineffective assistance of counsel in plea negotiations should be dismissed because he cannot establish that he was prejudiced by counsel's alleged erroneous advice and/or false assurances.  Within the context of analyzing ineffective assistance of counsel claims made by defendants who have entered guilty pleas, "prejudice requires a movant to show that a 'reasonable probability exists that, but for counsel's errors, defendant would not have pleaded guilty and would have insisted on going to trial.'"  Lundy, 2012 WL 928697 at *2 (quoting Hill v. Lockhart, 106 S.Ct. 366, 370 (1985)).  A defendant may not simply assert in a conclusory fashion (as Gilliam does here) that he would have pled not guilty if accurately counseled.  As the Sixth Circuit explained in Pilla v. United States, a 2255 movant who pleads guilty cannot establish prejudice

by telling us now that she would have gone to trial then if she had

19

gotten different advice. **The test is objective, not subjective**; and thus, "to obtain relief . . . a petitioner must convince the court that a **decision to reject the plea bargain would have been rational under the circumstances.**"

Pilla, 2012 WL 360449 at *3-4 (6th Cir. Feb. 6, 2012) (emphasis added) (quoting Padilla v. Kentucky, 130 S.Ct. 1473, 1485 (2010). See also Frost v. United States, 2007 WL 1960605, at *4 (W.D. Va. July 5, 2007) (explaining prejudice prong within the context of alleged ineffective assistance of counsel after guilty pleas: "From the perspective of a reasonable defendant in the same circumstances as petitioner, the court must consider such objective factors as the strength of the government's case versus the strength of the defense case and any sentencing benefit received through the plea bargain versus the possible penalties to which the defendant would have been subjected if convicted after a trial.").

In this case, as a matter of law, Gilliam cannot establish prejudice because he fails to meet his burden of demonstrating that a rejection of the plea offer would have been an objectively rational decision under the circumstances. The government's case was exceedingly strong and this is a factor which must weigh heavily against Gilliam in the prejudice analysis. Gilliam was videotaped engaging in negotiations for a narcotics transaction with a DEA confidential source. Gilliam had sold crack cocaine to this particular CS on prior occasions. During the recorded negotiations, Gilliam asked the CS to front the purchase money to him, but the CS refused. Gilliam then explained that he would need to leave for a brief period of time in order to "drop" or "cook up" the crack. Gilliam further touted the quality of his crack cocaine, telling the CS that his "shit" was "like fire." Gilliam left the CS's residence (to go and manufacture the crack cocaine), then he called back about an hour later and told the CS that he was on his way. Shortly thereafter, co-defendant Baty

showed up and delivered a bag containing crack cocaine to the CS.  During the delivery, phone records show that Gilliam placed a phone call to Baty.  Baty cooperated and was willing to testify that Gilliam had offered to pay him money in exchange for delivering the crack to the CS.

The foregoing facts clearly indicate that Gilliam had very little prospect of formulating any viable defense had he gone to trial.  Gilliam suggests the possibility that Baty's alleged recantation would have provided him with a defense, however as previously discussed, the government's case was sufficiently strong without Baty's testimony so this would have been unlikely to affect the outcome.

From the standpoint of an objectively reasonable defendant similarly situated to Gilliam, the only reasonable decision was to plead guilty, earn a 3-point reduction for accepting responsibility, and make every effort to mitigate the sentence through cooperation with the government and/or a downward variance from the guidelines range based on public policy considerations with respect to the disproportionate powder/crack cocaine ratio.  This is precisely what Gilliam opted to do, after receiving competent advice from trial counsel.  Ultimately, Gilliam's cooperation efforts failed and the district court denied his request for a sentencing variance.  However Gilliam's present dissatisfaction with the sentence he received, while understandable, is not grounds to vacate his conviction.  Gilliam cannot establish that a decision to proceed to trial would have been objectively reasonable, and therefore he fails to meet the prejudice prong of Strickland.

Moreover, the record conclusively establishes that Gilliam entered a fully informed plea of guilty after being correctly advised of the maximum penalties and the consequences of his decision.  This further defeats Gilliam's ability to show that he was prejudiced by counsel's alleged misadvise regarding the career offender enhancement and alleged false assurance regarding the sentence which

Gilliam would ultimately receive.  See Doganiere v. United States, 914 F.2d at 168 (denying 2255 relief for movant who had pled guilty and alleged that trial counsel was ineffective due to an inaccurate prediction regarding movant's sentence; finding that defendant "suffered no prejudice from his attorney's prediction because, prior to accepting his guilty plea, the court explained that the discretion as to what the sentence would be remained entirely with the court."); Gonzalez v. United States, 33 F.3d 1047, 1051-53 (9th Cir. 1994) ("the district court informed [the defendant] of the maximum possible sentences and fines for the offense to which he pleaded guilty.  He responded affirmatively when asked if he was satisfied with [counsel]'s representation of him.  As a result, [he] cannot claim he was prejudiced by [counsel]'s alleged gross error in calculating the sentencing Guidelines range and likely sentence.")

### 3.   Alleged Ineffective Assistance of Counsel in Failure to Challenge Career Offender Enhancement

In 1992, Gilliam sustained a conviction in Florida Circuit court for possession of marijuana with intent to distribute and possession of cocaine with intent to distribute (PSI at ¶34).  This prior conviction was used as a predicate for Gilliam's career offender designation (PSI at ¶26).  Gilliam claims that his trial counsel rendered ineffective assistance at sentencing and on appeal by failing to preserve an objection to and/or collaterally challenge Gilliam's 1992 drug conviction premised upon the previous uncertainty regarding the facial constitutionality of chapter 893, Florida Statutes (2011), the Florida Comprehensive Drug Abuse Prevention and Control Act, the state statute which creates offenses related to the sale, manufacture, delivery and possession of controlled substances.

On July 12, 2012 (approximately one month after Gilliam filed the instant 2255 motion), the Florida Supreme Court issued an opinion upholding the constitutionality of Florida's drug laws.

Florida v. Adkins, et al., — So.3d —, 2012 WL 2848903 (Fla. Sup. Ct. 2012). This eradicates the whole premise underlying Gilliam's arguments, and his claim of ineffective assistance of counsel must therefore be dismissed. See Broadwater v. United States, 347 Fed. Appx. 516, 2009 WL 3104015 (11th Cir. 2009) (failure to raise meritless issue does not constitute ineffective assistance of counsel); United States v. Cook, 45 F.3d 388, 392 (10th Cir. 1995) (citing United States v. Dixon, 1 F.3d 1080, 1084 n.5 (10th Cir. 1993)).

For the same reasons, Gilliam's related claim – that he is "actually innocent" of the career offender designation – must also fail.

### C.     Gilliam's Section 2255 Motion Should Be Denied Without A Hearing.

It is well-settled that the simple filing of a §2255 motion does not establish any right to a hearing. See Newfield v. United States, 565 F.2d 203, 207 (2d Cir. 1977); 28 U.S.C. §2255(b) (no hearing where record conclusively shows no entitlement to relief). A petitioner must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact which, if proved at a hearing, would entitle him to relief. See United States v. Aiello, 900 F.2d 528, 534 (2d Cir. 1990); Newfield, 565 F.2d at 207. Where a defendant's claims, even if true, fail to state a claim upon which habeas relief can be granted, the claims are subject to dismissal without a hearing. Machibroda v. United States, 368 U.S. 487, 495 (1962); Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991). Thus, no evidentiary hearing is required where, as here, the written record conclusively shows that the defendant is not entitled to relief. See Anderson v. United States, 948 F.2d 704, 706 (11th Cir. 1991); Tejada, 941 F.2d at 1559; Harich v. Dugger, 844 F.2d 1464, 1471 n.7 (11th Cir. 1988) (holding that a hearing is not required "where the petitioner's allegations are affirmatively contradicted in the record.")

## CONCLUSION

For the foregoing reasons, Gilliam's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. §2255 should be dismissed.

Respectfully Submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY

 s/*Kimberly Abel*_____

By:   KIMBERLY ABEL
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No. 0134015
500 S. Australian Ave., Suite 400
West Palm Beach, FL 33401-6235
Telephone: (561) 820-8711
Fax: (561) 659-4526

## CERTIFICATE OF SERVICE

I hereby certify that on August 10, 2012, I electronically filed the foregoing document, Government's Response to Movant's Motion to Vacate Sentence Under 28 USC 2255, with the Clerk of the Court using CM/ECF, and served a copy of the response to the pro se defendant via U.S. Mail.

s/ *Kimberly Abel*_____
KIMBERLY ABEL
ASSISTANT UNITED STATES ATTORNEY

24

## SERVICE LIST
### CASE NO. 12-14214-CV-MOORE
### (10-14004-CR-MOORE/LYNCH)
### MAGISTRATE JUDGE P.A. WHITE
### United States District Court/Southern District of Florida

**Kimberly Abel**
Assistant U.S. Attorney
Kimberly.Abel@usdoj.gov
500 S. Australian Avenue, Suite 400
West Palm Beach, Florida 33401
Telephone: 561-820-8711
Fax: 561-659-4526
Counsel for United States of America


**Rollie Gilliam** - Reg. No. 94332-004
Coleman II – USP
United States Penitentiary
Post Office Box 1034
Coleman, FL 33521
PRO SE